# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY DEELEE | : | |
| Plaintiff | : | |
| v | : | Civil Action No. RWT-05-3198 |
| THE STATE OF MARYLAND, *et al.* | : | |
| Defendants | : | |

o0o

## MEMORANDUM OPINION

Pending in this civil rights action is a Motion to Dismiss or for Summary Judgment filed on behalf of Defendants Correctional Medical Systems, Rose Mary Robinson, and Catherine Blacker. Paper No. 16. Plaintiff was advised of his right to file an opposition to the motion and of the consequences of failing to do so, but has failed to file anything further in this case. Paper No. 17. In addition, a Motion to Dismiss or for Summary Judgment has been filed on behalf of Mary Ann Saar, the State of Maryland, Department of Correctional and Sean Sheppard. Paper No. 19. Plaintiff again was advised of his right to file an opposition to the motion and the consequences of failing to do so, but did not file anything further. Paper No. 20. Upon review of the papers filed, together with the allegations raised in the unverified Complaint as amended, Defendants' motions, construed as motions for summary judgment[1] shall be granted.

### Plaintiff's Allegations

Plaintiff alleges that on August 23, 2005, five correctional officers[2] came into his cell to

---

[1] The Complaint names the State of Maryland and the Department of Corrections as Defendants. They are dismissed from the Complaint because they are not "persons" within the meaning of 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989) (statute requires cause of action against a person which does not include state or state officials acting in their official capacity).

[2] None of the correctional officers involved was named as a defendant in either the Complaint or the Amended Complaint. Papers No. 1 and 3.

remove him because he was having a mental breakdown. Paper No. 1. He claims he was placed in a choke hold by one of the officers entering his cell and remained in the choke hold until his body went limp and he was biting his tongue. Id. Plaintiff states that as he was coming back to consciousness, the officers handcuffed him so tightly the cuffs cut into his wrists. Id. He claims that after the cuffs were put on, officers began bending his wrists into the cuffs until one of his wrists popped and became swollen. Id. Plaintiff's requests to have pictures taken of his wrists were refused. He claims one wrist remained swollen for about a month after the incident. Id. Plaintiff asserts that he was denied medical care for his wrist for 38 days, from August 23, 2005 to September 30, 2005, when he received an x-ray. Id.

Plaintiff further alleges that on September 23, 2005, Defendant Sean Sheppard slammed his wrist in the feed-up slot on his cell door and placed his body weight on the door while Plaintiff's wrist was in the door. Id. He claims: his request for medical treatment was denied; no pictures were taken; and he suffers from two numb fingers as well as shooting pains from elbow to wrist as a result of the injury. Id. Plaintiff asserts that his continued complaints about the lingering symptoms he suffers are ignored by medical staff. Id.

In his amended Complaint, Plaintiff claims that on January 13, 2006, Nurse Cathy Blacker assaulted him by digging her fingernail into Plaintiff's right hand. Paper No. 3. Plaintiff claims he took issue with Defendant Blacker's instructions to remove his medication from a zip-lock bag in order to take it. Id. Plaintiff asserts that he protested that he should not be required to do her job for her, and in response, Blacker tried to remove the bag from his hand. Id. Plaintiff claims in her attempt to retrieve the bag Blacker dug her fingernail into his hand, breaking the skin. Id.

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. See Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. See Anderson, 477 U.S. at 256.

In Celotex, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the
> burden of proof at trial on a dispositive issue, a summary judgment

> motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Celotex, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting Seago v. North Carolina Theatres, Inc., 42 F.R.D. 627, 632 (E.D.N.C. 1966)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

<u>Analysis</u>

Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U. S. 1, 6-7 (1992). This court must look at: the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U. S. 312, 321 (1986).

The force used against Plaintiff in this case was application of handcuffs for purposes of transporting him to the medical unit for psychiatric treatment. The undisputed facts establish that on August 23, 2005, Plaintiff was in his cell, threatening to hurt himself. Paper No. 19 at Ex. 1, p.

3. Two officers, Smith and Hammann, went into his cell and ordered Plaintiff to place his hands behind his back so he could be handcuffed. Id. Plaintiff complied with the order, his hands were cuffed, and he was escorted to the medical unit where he was placed in the administrative segregation isolation area (ASIA) for observation. Id. The force used was minimal, necessary to insure Plaintiff's safety and caused no serious harm.[3] Defendants are, therefore, entitled to summary judgment in their favor on this claim.

Regarding the alleged September 23, 2005 incident, the force used was, again, application of handcuffs in response to Plaintiff's refusal to leave his psychologist's office. After Plaintiff was placed in the handcuffs, he refused to allow them to be taken off. Plaintiff admitted to the refusal at an institutional adjustment hearing charging him with disobeying a direct order. See Paper No. 16 at Ex. 6, p. 6. Plaintiff has failed to produce any evidence or affidavits establishing that his hand was slammed inside of a feed-up slot as alleged in his Complaint. Defendants are entitled to summary judgment in their favor on this claim.

Plaintiff's claim against Defendant Blacker is also without merit. In her affidavit, Blacker admits that there was a disagreement with Plaintiff concerning the administration of his medication. Paper No. 16 at Ex. B. She explains, however, that when Plaintiff refused to return the plastic bag that contained his medication she allowed him to leave with it and never touched him. Id. Plaintiff has not disputed her account of the events. Even assuming Plaintiff's allegations are true, the injury he allegedly received as a result of the incident, a superficial scratch to the palm of his hand, is constitutionally de minimus. Defendant Blacker accordingly is, entitled to summary judgment in her favor regarding the excessive force claim.

---

[3] Plaintiff's alleged wrist injury and his claim regarding lack of medical care for it are discussed infra.

Deliberate Indifference to a Serious Medical Need

In order to state an Eighth Amendment constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. See Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. See Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Donlan v. Smith, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Hudson v. McMillian, 503 U. S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" Anderson-El v. O'Keefe, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting Davis v. Jones, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical

6

problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. See Burns v. Head Jailor of LaSalle County, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Plaintiff claims that his wrist was injured and he received no medical attention for the injury for a period of 30 days. Paper No. 1. Medical records and affidavits submitted by Defendants indicate that Plaintiff was seen by medical staff on August 23, 2005, when he stated that "everybody is trying to kill me. They were choking me." Paper No. 16 at Ex. D, p. 22. Plaintiff was seen by Nurse Robinson who noted he made poor eye contact, seemed fearful, and had no marks on his neck or hands. Id. Plaintiff was placed in ASIA for psychiatric observation. Id. A medical record dated August 27, 2005, indicates that Plaintiff was complaining of left wrist pain, that his wrist was swollen; and that the swelling was caused by a bruise. Id. at p. 1. At that time an x-ray was ordered.[4] Id. Plaintiff was seen again on September 17, 2005, when he complained about wrist pain. Id. The nurse observed Plaintiff removing a rubber band or string from around his wrist at that time, but did not observe any visible sign of injury. Id. at p. 6.

On September 28, 2005, Plaintiff was again seen by medical staff when he complained again that his wrist was swollen. An x-ray, performed on September 30, 2005, revealed no fracture to Plaintiff's wrist. Id. at p. 9. Plaintiff was ultimately diagnosed with ulnar nerve contusion, advised that the injury would heal on its own and told to limit the use of his left hand to encourage healing. Id. at p. 11. Plaintiff demanded an MRI of his wrist and threatened to file a law suit against medical personnel if he did not receive one. His disagreement with the medical treatment selected is not, however, a basis for a constitutional claim.

---

[4] The x-ray ordered on August 27, 2005, apparently never was taken.

## Conclusion

Plaintiff has not opposed Defendants' Motions for Summary Judgment. In light of the evidence submitted and the undisputed facts of the case, this court concludes that Defendants are entitled to judgment in their favor on all claims raised in the Complaint. A separate Order follows.

Date: 10/12/06

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE